Golden Construction Company, Inc. v. Commissioner.
Golden Constr. Co. v. Commissioner
Docket No. 48546.
United States Tax Court
T.C. Memo 1954-221; 1954 Tax Ct. Memo LEXIS 22; 13 T.C.M. (CCH) 1124; T.C.M. (RIA) 54327; December 16, 1954, Filed *22 E. Lael Alkire, Esq., for the petitioner. Melvin A. Bruck, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency in petitioner's income tax for the fiscal year ended July 31, 1950, in the amount of $13,065.38. The sole question presented is what was reasonable compensation for the services rendered by A. C. Golden, president of petitioner corporation, during the fiscal year ended July 31, 1950. Other adjustments in the deficiency notice are not contested by petitioner. Findings of Fact Some of the facts were stipulated and are made a part hereof. Petitioner is a Kansas corporation, incorporated in 1944, with its principal office in Wichita, Kansas. Its income tax return for the fiscal year ended July 31, 1950, was filed with the then collector of internal revenue for the district of Kansas. Its principal business was the construction of houses for sale. A. C. Golden, hereinafter called Golden, was at all times petitioner's sole stockholder, except for qualifying shares, and was also its president. From 1939 to 1944 Golden, as an individual, was engaged in the business of building *23 houses for sale. The number of housing units completed by petitioner each year was as follows: Number
of Units
Year Ended
Completed
July 31, 1945
35
July 31, 1946
10
July 31, 1947
46
July 31, 1948
49
July 31, 1949
96
July 31, 1950
60
Statistics respecting the sale of houses, profits, officer's salary and taxable income, according to petitioner's books of account, are as follows: Profit Before Officer's
Salary [1]
Fiscal Year
Houses Sold
Accrual
Installment
Ended
Number
Amount
Basis
Basis
7/31/45
15
$ 90,000.00
$ 4,473.27
$ 4,473.27
7/31/46
25
136,635.65
3,937.62
3,937.62
7/31/47
48
337,108.23
30,221.72
20,633.20
7/31/48
49
376,585.00
31,471.95
16,061.83
7/31/49
94
683,989.10
119,122.21
83,695.90
7/31/50
64
508,620.85
[3] 77,399.31
[3] 82,181.86
Percent of Officer's
Salary
to Profits
Fiscal Year
Officer's
Net Taxable
Accrual
Installment
Ended
Salary
Income [2]
Basis
Basis
7/31/45
$ 4,025.93
$ 440.60
90.0%
90.0%
7/31/46
3,543.86
387.64
90.0%
90.0%
7/31/47
12,088.69
8,410.31
40.0
58.6%
7/31/48
12,588.78
3,417.28
40.0
78.4%
7/31/49
47,648.88
35,552.94
40.0%
56.9%
7/31/50
44,437.60
[3] 37,265.67
[4] 57.4%
[4] 54.1%
*24 Petitioner paid no dividends prior to July 31, 1950. Golden's reputation in the community is that he is far above the average builder. Golden managed and operated the corporation. He was the only executive officer actively engaged in carrying on the corporation's business. He negotiated loans for the purchase of development land, and for the financing of the housing. He determined the places where houses would be built. He purchased all the building materials, except for minor supplies. He supervised the building of the houses, along with a job foreman. He alone had the authority to hire and fire workers. The most men ever employed by the corporation during the year in question was seventy-five or one hundred. Golden had no business activity other than the operation of the corporation, to which he customarily devoted twelve or fourteen hours a day. Completed houses were customarily marketed through a real estate firm. Golden sold a number *25 of houses, but generally a real estate agent sold them. The agent was paid a commission of five per cent of the selling price. Residential construction was discontinued in the latter part of the fiscal year in question, about which time Golden was hospitalized by illness. He was hospitalized a couple of times during 1950. The sixty units completed by the corporation during the year in question included some projects which had been started prior to the beginning of that year. Houses in process of construction at the beginning of the year amounted to $96,230.50. At the end of the fiscal year, construction in process amounted to $24,629.96 consisting solely of a commercial building. Golden, as sole owner of petitioner's stock, fixed his own salary as its president each year. Usually his salary was based on a percentage of petitioner's accrual profits. For the fiscal year in question Golden's salary was computed at approximately 60 per cent of petitioner's accrual profit for that year. For the three preceding fiscal years, Golden's salary was computed at 40 per cent of petitioner's accrual profit. Golden's duties in the year in question were not different from what they had been *26 theretofore. Petitioner paid Golden $44,437.60 as compensation for his services for the fiscal year ended July 31, 1950, and in its income tax return for that fiscal year claimed said amount as a deduction. Respondent, in his notice of deficiency, determined and held that $20,000 was reasonable compensation for the services rendered by Golden to petitioner, and disallowed the sum claimed in excess of that amount, viz: $24,437.60. Reasonable compensation for the services actually performed by Golden for petitioner for the fiscal year ended July 31, 1950, was $31,000. Opinion Section 23(a)(1)(A), Internal Revenue Code of 1939, allows taxpayers to deduct from gross income "all ordinary and necessary expenses" incurred in carrying on a trade or business "including a reasonable allowance for salaries or other compensation for personal services actually rendered." Was the sum of $44,437.60 paid by petitioner to Golden, its president, for services in the taxable year, deductible in full, as claimed by petitioner, or was only $20,000 thereof deductible, as the Commissioner determined? There is no fixed and mathematical rule by which reasonable allowance can be determined. What *27 is reasonable is dependent upon the facts and circumstances of each particular case. Hoffman Radio Corporation v. Commissioner, 177 Fed. (2d) 264. In determining what is reasonable compensation in a given case, a number of factors must be considered, among other things the employee's qualifications, the extent and scope of his work, prevailing rates of compensation for comparable positions in comparable concerns, size and complexity of the business, ratio of salaries to gross income and net income, salaries paid in prior years, and comparison of salaries with distributions to stockholders. Mayson Manufacturing Co. v. Commissioner, 178 Fed. (2d) 115. The Commissioner's determination of what is a reasonable compensation is presumptively correct; the burden is upon petitioner to prove that it is entitled to a deduction in excess of that determined by the Commissioner. Botany Worsted Mills v. U.S., 278 U.S. 282; Crescent Bed Co., Inc. v. Commissioner, 133 Fed. (2d) 424. Special scrutiny should be given where the corporation's stock is closely held, since there is a lack of arm's-length bargaining, thus indicating a possible intent *28 to effect disguised distribution of profits. Fifteenth & Chestnut Realty Co., 29 B.T.A. 1030; Wagegro Corporation, 38 BTA 1225. Failure to pay dividends may be considered as a factor in determining that salaries were in excess of a reasonable amount. Long Island Drug Co., 35 B.T.A. 328, affd. 111 Fed. (2d) 593, certiorari denied, 311 U.S. 680. In the instant case all of petitioner's stock was owned by Golden and he admittedly fixed his own salary each year, without the intervention of a board of directors. It is also significant that petitioner did not pay a single dividend during the year in question or in any prior year since incorporation, although it amassed a considerable amount of earned surplus. Both petitioner and respondent offered evidence in support of their respective contentions as to what amount was reasonable compensation. Petitioner's three witnesses testified that the sum paid by petitioner to Golden was reasonable and customary, but their evidence was not satisfactory or convincing. In each instance it was merely the expression of an opinion in the nature of a conclusion, unsupported by facts *29 or circumstances indicating how it was arrived at. None of them cited specific instances or amounts paid by other corporations engaged in a similar business so that comparison could be made. It appeared there was no fixed percentage basis in the industry by which salaries were determined. One of petitioner's witnesses, president of a loan and trust company that financed many of these construction companies, including petitioner, testified that in "a one man corporation" such as this there was no fixed basis for determining salaries, and that they were "usually based on what is left after the bills are paid." Respondent offered only one witness, but his testimony was pertinent and more helpful in passing upon the issue here. He was president of a corporation (the Jayhawk Construction Co.) engaged in the same business as petitioner, and its volume of business was somewhat larger than that of petitioner. The Jayhawk had four executives, while petitioner had only one. The aggregate compensation Jayhawk paid its four executives was proportionately much less than that petitioner paid Golden. The percentage of executives' salaries to profits paid by Jayhawk to its four officers in 1950 *30 was 27 per cent, and in 1951 was 28.01 per cent, while in the taxable year petitioner's was about twice that amount. For each of the three years immediately preceding the fiscal year in question, Golden's salary was computed at 40 per cent of petitioner's accrual profits, which was apparently acceptable to both petitioner and respondent. If that same basis of computation had been used in the taxable year in question, Golden's salary would have been, in round numbers, $31,000. There was no evidence indicating any reason for increasing same. We have carefully weighed and considered all of the evidence, and based thereon, and from the record as a whole, we have found as an ultimate fact that reasonable compensation for the services performed by Golden for petitioner in the fiscal year ended July 31, 1950, was $31,000, and we so hold. Decision will be entered under Rule 50. Footnotes
1. Before Federal and State income taxes. ↩
3. After non-protested Revenue Agent's adjustments. ↩
2. Before Federal income taxes. ↩
4. Percentages were 60% and 56.4%, respectively, before non-protested Revenue Agent's adjustments.↩